The People *ex rel.* John C. Campbell, Appellant, *v.* Allen Campbell, Commissioner of Public Works, Respondent.

The relator C. was appointed "chief engineer of the Croton aqueduct,'' under the New York charter of 1873 (chap. 338, Laws of 1873); by the action of the chief of the department of public works and by his own assent, he also became, acted and described himself as engineer of that department, and was the only chief engineer therein. *Held*, that conceding C. might lawfully have declined the added duties, yet having assumed them, the commissioner of public works could rightfully hold him responsible for their proper performance.

Also *held*, that if in the performance of the added duties, C. developed a want of skill or ability as engineer, or an inefficient and slack control, this was a sufficient ground for his removal from his office.

But *held*, that C. was not responsible for the inefficiency or incapacity of assistants whom he did not and had no power to appoint.

In the course of a street improvement of which the relator had supervisory charge as acting engineer of the department of public works, an arch was built. In the contract for the arch and roadway provision was made for inspectors "to inspect the material to be furnished and the work done," to be appointed by the commissioner, and to report to him and to the superintendent of street improvements. Such an inspector was appointed. The arch fell in consequence of "bad workmanship and the use by the contractor of bad materials." C. had no knowledge of the imperfections until they were developed by the cracking and settling of the arch. *Held*, that as it was impossible for C. to watch personally all the different works of improvement in progress at the same time in the city, and as this duty was, in regard to the work in question, expressly assigned to inspectors over whom C. had no official control, he was not required to watch the material and work or to detail an assistant for that purpose, and was not responsible for the negligence or misconduct of the inspectors.

Also *held*, that the fact that C. advised or instructed the inspectors did not change his position.

While if in proceedings under said charter (§ 28) by the head of a department to remove a subordinate, there is any evidence from which an inference of incapacity or unfitness can be drawn, this court will not reverse his decision; there must be some evidence to justify a removal, and where there is none the removal is not "for cause," and the order may be reversed here.

*People* v. *Board of Police* (69 N. Y. 409), distinguished.

(Argued April 20, 1880; decided October 5, 1880.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, which dismissed a writ of *certiorari*, brought to review the proceedings of the defendant, as commissioner of public works in the city of New York, in removing the relator from the office of "chief engineer of the Croton aqueduct."

The relator was appointed engineer in August, 1875, by the commissioner of public works. The incumbent of that office was required by the commissioner to exercise, and did exercise, general supervision over all the work carried on under the immediate supervision of the bureau of street improvements, and he certified to the correctness of vouchers for payment therefor. He was termed the chief engineer of the department of public works, and was so designated in all contracts for such work. In 1877, a contract was made between the commissioner of public works, on behalf of the city, and one Byron, for the construction of an arch of masonry on Forty-second street, over which the roadway was to pass. The contract contained a clause authorizing the commissioner to appoint one or more persons to inspect the material to be furnished, and the work done under the contract, to see that the same corresponded with the specifications; said inspectors were to be placed on the work at its commencement and retained until it was finally completed. An inspector of the work was appointed by the commissioner, with directions to report to the commissioner in case of any work being done, or materials furnished, not in accordance with the contract and the directions of the surveyor, and to report the state of the work once in each week to the superintendent of street improvements. After the arch was constructed a portion of it fell. A few days prior to this, the relator notified the commissioner that the arch was settling unevenly and cracking, showing bad work. The commissioner called upon the relator to report the cause of the falling of the arch, and the circumstances connected with it. The relator reported as to the cause as follows: "The cause of the falling of the arch is bad workmanship, bad mortar used in the work, and the spandril back-

ing imperfectly laid." Upon the rendering of said report, the commissioner notified the relator that he proposed to remove him from his office, on account of his neglect in allowing " workmanship and materials to be used in the construction of said arch inferior to the requirements of the contract," and desired him to make an explanation. The relator, as his explanation, stated that he was not responsible for the defects, as the work was not under his charge; that the defects were due to the neglect of the inspector, with whose appointment relator had nothing to do, and over whom he had no authority. Thereupon, the commissioner ordered the relator's removal, because of negligence in allowing the bad workmanship and material.

*Douglas Campbell* for appellant. The removal of the relator was illegal, no proof of the charge upon which he was removed having been given. The charge not having been admitted it should have been proved. (*People ex rel. Mayor, etc.,* v. *Nichols,* Court of Appeals; *Nichols* v. *Mayor, etc.,* LAWRENCE, J.; Dillon on Corporations, §§ 192, 193; Wilcox on Corporations, ¶ 702; *Murdock* v. *Phillips Academy,* 7 Pick. 303; 12 id. 243–263; *Rex* v. *Faversham,* 8 D. & E. 352; *People ex rel. Munday* v. *Board Fire Com'rs,* 72 N. Y. 445; *Queen* v. *Saddlers' Co.,* 10 H. of L. Cas. 404; *Fuller* v. *Plainfield,* 6 Conn. 532, 546; *Page* v. *Hardin,* 8 B. Monr. L. & Eq. 649, 672; *Vosberger* v. *Welch,* 11 Johns. 175, 177; *People ex rel. Kenyon* v. *Sutherland,* 16 Hun, 192.) The relator being engineer of the Croton aqueduct, neglect of duty as engineer of the department of public works would not justify his removal from the former office. (*Baggs' Case,* 11 Rep. 93; *Reg.* v. *Newberry,* 1 Q. B. 751; *Shapley* v. *Abbott,* 42 N. Y. 443; *Baker* v. *The Mut. L. Ins. Co.,* 43 id. 283; *Crawford* v. *Lockwood,* 9 How. 547; *Knettle* v. *Newcomb,* 31 Barb. 170; affirmed, 22 N. Y. 249; *White* v. *Ashton,* 51 id. 280; Dillon on Corporations, § 190, note; *Rex* v. *Doncaster,* 2 Ld. Raym. 1564.) The charge being neglect of a particular duty, to sustain it the duty must be shown. (*People ex rel.*

*Bancroft* v. *Weygart*, 14 Hun, 546; Dillon on Corporations, § 192; *Reg.* v. *Bailiffs, etc., of Ipswich*, 2 Ld. Raym. 1232, 1240; *Towpert* v. *Lithgow*, 1 Bush [Ky.], 176; *Rex* v. *Liverpool*, 2 Burrows, 732; *Comm.* v. *Arnold*, 3 Littell, 327; *Fuller* v. *Plainfield*, 6 Conn. 532, 546; Wilcox on Corporations, ¶ 701.) The relator cannot be held responsible for the neglect of the inspector whom he did not appoint, and over whose actions he had no control. (*Kelly* v. *Mayor, etc.*, 11 N. Y. 432; *Pick* v. *Mayor, etc.*, 8 id. 222.)

*D. J. Dean* for respondent.

FINCH, J. Some facts in this case are apparently beyond dispute, and narrow the discussion to a single point.

It is entirely certain that the arch in Forty-second street fell as the consequence of "bad workmanship and the use by the contractor of bad materials." When its fall impelled investigation, the commissioner of public works demanded of the relator an explanation of the cause. The latter answered that it was "bad workmanship, bad mortar used in the work, and the spandril backing imperfectly laid." As between the commissioner and the engineer this fact was distinctly conceded, and needed no additional or formal proof. The inference followed irresistibly that somebody was in fault; not merely the contractor and his servants who did the imperfect work, but also the person or persons whose supervision should have detected and prevented the careless and insufficient construction. All this was practically conceded by the relator, when called upon for an explanation, for resting his defense upon the sole ground left to him, consistent with his own distinct admission, he answered merely that he was not responsible for the defect; that the fault was not his.

It is equally certain that the relator could only be removed for cause. (*People ex rel. Munday* v. *Board of Fire Com'rs*, 72 N. Y. 445; *People ex rel. Sims* v. *Fire Com'rs*, 73 id. 437.) The protection given by the charter to his tenure of office we have held to be substantial and effective, and not merely shadowy or

formal.   But sufficient cause was shown, unless the relator's defense was sound.   If, as supervising engineer, he was responsible for the defective construction and poor material which were the admitted cause of the ruined arch, the case was established against him, and he was removed for cause.

The question, therefore, which confronts us is whether he was so responsible, and that leads to a study of his office and its duties, and of his relation to the work in question.

Under the law, he was "chief engineer of the Croton aqueduct," and in that capacity merely had no duty or responsibility imposed upon him, in respect to the defective structure. The arch in process of construction supported a roadway, and was a street improvement having no connection with the aqueduct or the city's water supply.   But the facts stated in the return show that while the relator, under the charter, was only engineer of the Croton aqueduct, as matter of fact, he was also engineer of the department of public works.   He became so by the action of the chief of that department and his own concurring assent.   In signing the vouchers for the work in Forty-second street he adopts that title.   The duty limited by the law to the aqueduct and water supply became, apparently through necessity, but at least with his assent, and that of the commissioner, extended over the department of public works. While technically the head of one of several bureaus in the department of public works, he was really the only chief engineer in the whole department.   The charter seems to have mistakenly assumed that only the bureau having charge of the water supply needed an engineer ; and when in the work of some other bureau the need of an engineer became apparent, it was quite natural, in the absence of any legal provision, that the remedy chosen should be an extension of the duties of the engineer at the head of a single bureau to the engineering work of the whole department.   The relator suffered this change to be made.   He placed himself, or allowed himself to be placed, relatively to the work in Forty-second street, in the attitude of supervising engineer, and is described in the contract as engineer of the department of public works.   Grant-

ing that he might lawfully have declined such added duties and kept within the narrower range indicated by his official title, it is enough to say that he did not, and the commissioner of public works had therefore the right to hold him responsible in the capacity which he assumed.

That our conclusions must necessarily rest on this basis is apparent from another view of the situation. The conceded fact of imperfect work and bad material in the construction of the arch proves inefficiency or dishonesty on the part of the person who in fact had the responsible supervision, independent of any question as to its origin. The relator assumed the supervision, undertook the duty, and if, in the process of its performance, he developed a want of skill or ability as an engineer or an inefficient and slack control, the commissioner might well deem it imprudent to trust the water supply of the metropolis in such unsafe hands, and assign as sufficient cause for removal, incapacity or want of skill betrayed in the attempt to supervise a construction which the relator need not have touched, but which, when voluntarily undertaken, at least tested his faithfulness and skill.

The conclusion therefore follows, that the commissioner of public works had a right to judge the relator as the supervising engineer of the work in Forty-second street, and to call on him for an explanation. The charge was fairly and sufficiently stated; an opportunity for explanation was given, the defense that the fault was not his was interposed, and the head of the department deciding otherwise, removed him.

The question is thus narrowed down to the relator's defense and to the inquiry whether he was in truth responsible for the conceded fault.

It is not alleged or claimed that he had any knowledge of the imperfect work or materials, until the fact was developed by the falling of the arch or the cracking and settling which preceded this fall; and we must assume that he had not. If, however, as supervising engineer he ought to have known it, he was in fault. If it was not his duty to have discovered it, he was blameless. *Prima facie,* and in the absence of modi-

fying facts, it was his duty as supervising engineer to have dis-
covered and prevented the defect.    Upon his skill and capacity
the employer had a right to rely.    The supervision of an engi-
neer is a farce or a fraud, if the work he controls can crumble
without his fault.    But this ordinary and usual rule may be
modified by the necessities of a great city or the pressure of a
multitude of important enterprises.    It was plainly impossible
for the relator to watch personally the placing of every brick
and the composition of the mortar daily prepared, where a
large number of structures were in progress at once in the
various and distant sections of the city.    If he did it at all, it
could only be through assistants detailed to the special duty.
In a case where such an engineer is sole master within the
range of his appropriate duties, and selects and appoints his
assistants, he may justly be held responsible for their inef-
ficiency or incapacity, because he appointed them and is respon-
sible for their skill and fidelity.    But he is not so responsible
where he has no power of appointment. (*Kelly* v. *The Mayor*,
*etc.*, 11 N. Y. 432; *Pack* v. *The Mayor, etc.*, 8 id. 222.)    In
such case he is guilty of no negligence.    The unwise and im-
proper appointment is not his, and every rule of justice would be
violated by imputing to him the negligence of an agent whom he
did not select and could not remove.    In the present instance, it
was so plain that the engineer having general supervision of the
work of the city could not watch and inspect the daily pro-
gress of every construction, that in the contract for the arch and
roadway special provision was made for the appointment of
inspectors to do that duty.    They were to be appointed, not
by the relator, but by the commissioner of public works, and
their duty was "to inspect the material to be furnished and
the work done under the agreement, and to see that the same
corresponded with the specifications."    And these inspectors
were required to report to the commissioner himself and to
the superintendent of street improvements.    Remembering
now that the duty of the relator as to this work was not im-
posed on him by the law or by his office, but grew solely out
of responsibilities flowing from the action of the commissioner

and assumed by the engineer, how is it possible to say that the duty of daily inspection was imposed by the one party and accepted by the other, when that duty was explicitly assigned by the commissioner to inspectors over whom the relator had no official control? On the contrary, is not the inference almost irresistible that the duty of daily inspection, which might justly have attached to the supervising engineer, was purposely taken away from him, and imposed on others whom he could not appoint and who were not even bound to report to him? It seems to us plain that the commissioner imposed this duty upon officers selected by him for that purpose, and the relator did not assume what was not only not given, but expressly withheld. He had a right to understand, he must necessarily have understood, that the duty of inspection of materials and of the quality of the workmanship was imposed on other officers, selected to perform that special duty, and that it was to be performed by them outside of any care or responsibility of his own. He could not have understood that he was to inspect the inspectors. Their appointment was absurd unless it was intended to relieve the engineer of the duty conferred on them. While the work progressed, therefore, he had a right to assume that the inspectors appointed by his chief were doing their duty, and that they were guarding against weak construction and poor material. He had a right to leave this duty where the commissioner had placed it, and to assume that his own skill and care were to be exercised in other directions. If, indeed, it were shown that he saw the imperfect work done or knew of the bad materials, and made no complaint and applied no remedy, that would have argued negligence or incapacity. But no such fact appears. He seems to have discovered the defect as soon as any one could have done so, except an inspector daily watching the work. Negligence is imputed to him in a direction where he owed no duty, and because of the misconduct or inefficiency of officers appointed by others and not within his effective control. He had a right to act on the basis that daily inspection was fully provided for by the head of the department; that if

any bad work or poor materials were used in the construction it would be at once discovered by the inspector and reported to the commissioner. He was not called upon, therefore, to detail an assistant to watch the material and work from day to day, nor to do so himself. Both the duty and the fault belonged to the inspector. Neither the duty nor the fault rested upon the relator.

We do not see any thing in the contract itself, or in the action of the engineer, to modify this conclusion. The contract, as a general rule, recognizes the commissioner as the controlling and supervising authority. It requires that the engineer shall explain any doubt or ambiguity in the specifications; that he may extend the time of performance, if the contractor is delayed by the construction of a sewer; that the engineer in charge shall inspect the cement unless other persons are assigned by the commissioner to that duty; and in the end that the engineer, conjointly with the inspector and superintendent of street improvements, shall give the final certificate of completion. These provisions cast no duty of inspection on the engineer. On the contrary, they recognize that it belongs elsewhere. The inspector is required to join in the final certificate, for the very reason that he, and not the engineer, is expected to know and be responsible for the quality of materials and honesty of daily work.

That the relator advised or instructed the inspector does not change the situation. That he explained to him how to test mortar does not make the relator responsible for the inspector's failure to apply the test. It is not shown or claimed that any advice or information so given was unwise or improper.

The learned counsel for the respondent insists that we are not to review the decision of the commissioner upon the merits, and authority is cited for that rule. (*People* v. *Board of Police*, 69 N. Y. 409.) Undoubtedly the law is correctly stated by the late chief judge in the case cited. Where there is any evidence before the officer from which an inference of incapacity or unfitness could be drawn, we are not to reverse the decision because our own conclusion would, perhaps, have

been different. But there must be some evidence to justify the removal. If there is none, the removal is not for cause, and the statute is violated. Here, we conclude, there was no evidence, since the solitary fact upon which the commissioner relied was one which in no manner affected the relator.

The order of the General and of the Special Terms should be reversed, with costs, and the order of removal reversed and annulled.

RAPALLO, ANDREWS and EARL, JJ., concur.

FOLGER, Ch. J., MILLER and DANFORTH, JJ.. dissent.

Ordered accordingly.