THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* Daniel Jackson *against* S. HASTINGS GRANT, Comptroller of the City of New York.

(Decided January 21st, 1884.)

Under the provision of the charter of the City of New York in regard to removals, by heads of departments, of chiefs of bureaus, clerks, &c. in their respective departments, that "no regular clerk or head of a bureau shall be removed unless he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation" (L. 1873 c. 335 § 28), the cause alleged for such a removal must be something substantial and some delinquency for which the party proceeded against is responsible; and if the party does give a reasonable explanation of his apparent delinquency or incapacity, or disproves the

charge made against him, the superior officer has no power of removal; nor is the removal within the uncontrolled discretion of the head of the department, even if the explanation given is not satisfactory to him; upon a review of his action, the court will see, not only that the technicalities of the statute have been complied with, but also that the cause assigned is one contemplated by the statute, and that the explanation given does not meet the charges.

But when, upon certiorari to review the action of the Comptroller in removing the Auditor of Accounts, it appeared that, as to some of the matters charged against the latter, of minor importance, he had not exhibited that degree of care which the duties of his office required, although it was not claimed that any damage resulted to the city: *Held*, that it was for the head of the department to say whether in his judgment the offense was sufficiently grave to justify the dismissal of the officer, and the court could not weigh the evidence so as to substitute its judgment for that of the removing officer, nor could it reverse his action because, in its opinion, that the punishment exceeded the offense.

CERTIORARI to review the action of the defendant, as Comptroller of the City of New York, in removing the relator from the office of Auditor of Accounts in the Finance Department of that city.

*John H. Strahan* and *Thomas Allison*, for relator.

*D. J. Dean*, for defendant.

VAN BRUNT, J.—The question to be determined in this proceeding is whether the Comptroller, in the removal of the relator from his position of Auditor of Accounts, has exceeded the powers conferred upon him by the statute. The sections of the charter which are to be referred to upon this question seem to be 28, 29, 30, 31, subdivision 4 of 33, and section 34.

They are as follows:—" Section 28. The heads of all departments (except as otherwise herein specifically provided) shall have power to appoint and remove all chiefs of bureaus (except the Chamberlain), as also all clerks, officers, employés and subordinates in their respective departments, except as herein otherwise specially provided, without reference to the tenure of office of any existing appointee. But no regular clerk or head of a bureau shall

be removed until he has been informed of the cause of the proposed removal, and has been allowed an opportunity of making an explanation; and in every case of a removal the true grounds thereof shall be forthwith entered upon the records of the department or board. In case of removal, a statement showing the reason therefor, shall be filed in the department. The number and duties of all officers and clerks, employés and subordinates in every department, except, as otherwise herein specifically provided, with their respective salaries, whether now fixed by special law or otherwise, shall be such as the heads of the respective departments shall designate and approve."

" Section 29. The Finance Department shall have control of the fiscal concerns of the corporation. It shall prescribe the forms of keeping and rendering all city accounts, and except as herein otherwise provided, the manner in which all salaries shall be drawn, and the mode by which all creditors, officers and employés of the corporation shall be paid. All payments by or on behalf of the corporation shall be made through the proper disbursing officer of the Department of Finance, on vouchers to be filed in said department, by means of warrants drawn on the Chamberlain by the Comptroller, and countersigned by the Mayor. The Comptroller may require any person presenting for settlement an account or claim against the corporation, to be sworn before him touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim."

" Section 30. The head of the Finance Department shall be called the Comptroller of the City of New York, and shall hold his office for four years and until his successor shall be appointed, unless sooner removed as herein provided."

" Section 31. All accounts rendered to or kept in the other departments shall be subject to the inspection and revision of the officers of this department; and subject to the conditions aforesaid, it shall settle and adjust all claims in favor of or against the corporation, and all accounts in

People v. Grant.

which the corporation is concerned as debtor or creditor, but in auditing and settling such claims, it shall, as far as practicable, be governed by the rules of law and principles of equity which prevail in courts of justice."

" Section 33. There shall be eight bureaus in this department. . . . . . 4. An auditing bureau, which, under the supervision of the Comptroller, shall audit, revise and settle all accounts in which the city is concerned as debtor or creditor, and which shall keep an account of each claim for or against the corporation, and of the sums allowed upon each, and certify the same to the Comptroller, with the reasons for the allowance ; the chief officer of which shall be called ' Auditor of Accounts.' "

" Section 34. The Chamberlain shall pay all warrants drawn on the treasury by the Comptroller and countersigned by the Mayor, and no moneys shall be paid out of the treasury except on the warrant of the Comptroller so countersigned. No such warrant shall be signed by the Comptroller or countersigned by the Mayor, except upon vouchers for the expenditure of the amount named therein, examined and allowed by the Auditor, approved by the Comptroller, and filed in the Department of Finance, except in the case of judgments, in which case a transcript thereof shall be filed, nor except such warrant shall be authorized by law or ordinance, and shall refer to the law or ordinance and to the appropriation under and from which it is drawn."

The Court of Appeals, in the case of *People ex rel. Munday* v. *Fire Commissioners* (72 N. Y. 448), have interpreted these sections and have attempted to define with considerable particularity the rights which regular clerks and heads of bureaus have in reference to the procedure of removal. The removal must be for cause, and the process of removal as prescribed by the statute must be pursued. The cause must be some dereliction or general neglect of duty, or some delinquency affecting the general character and fitness for the office. The cause must be personal, implying an unfitness for the place, and the party proceeded against

must be informed of the cause, and must be allowed an opportunity for explanation, which explanation may consist either of excusing any delinquency or apparent neglect or incapacity: that is, explaining the unfavorable appearances or disproving the charges. The cause alleged must, therefore, be something substantial, and some delinquency for which the party proceeded against is responsible, and if the party does give a reasonable explanation of his apparent delinquency or incapacity, or disproves the charge made against him, the superior officer has no power of removal.

It may be, as is claimed by the defendant, that the statute does not contemplate that the cause of the proposed removal shall be proved by legal evidence before the head of the department, but it certainly does contemplate that if it appears by the record that the alleged cause does not in fact exist, no removal shall be attempted because of it.

The Court of Appeals, in the case above cited, expressly hold that the explanation referred to in the statute may consist of proof that the charges are not true, and if that proof is made, certainly the head of the department cannot arbitrarily disregard it and make the removal as though no such proof had been offered.

It is urged by the defendant that if the explanation given is not satisfactory to his chief, the removal is within the uncontrolled discretion of the head of the department. This position seems to be in direct conflict with the rule laid down in the above case. The court upon review have not only the right to see that the technicalities of the statute have been complied with, but also that the cause assigned is one contemplated by the statute, and that the explanation given does not meet the charges. It is certainly true that the above conclusions seem to militate against the views expressed by the court in the *Keech* case (26 Hun 28), but the whole spirit of the opinion in the case of *Munday* is opposed to the uncontrolled power to remove where an explanation which should have been satisfactory is made or when the alleged cause is disproved. Also in the case of *Campbell* (82 N. Y. 247), the court expressly lay down the

rule that there must be some evidence before the officer which will justify the removal. If there is none, then the removal is not for cause and the statute is violated.

The charges preferred against the relator seem to be these :—

1. Negligence in auditing vouchers for coupons.

2. Dilatoriness in attendance, frequently arriving so late as to delay the auditing of claims which should have received prompt attention.

3. Auditing claims in such a way as to leave the city treasury liable to be called upon to pay twice the same claim.

4. Certifying a pay roll at $652.50 when the aggregate amount of the monthly salaries thereon, as certified by the Board of Health, was only $615.

5. Certifying a bill of William Walgrain at $282.66, whereas the amount due to him was only $182.66.

6. Not noting erasures.

7. Certifying an allowance of a bill of the Law Department in advance of the certification of such bill by the head of the department.

8. Certifying the bill of Duryea at $2,973.50, when the certificate of the commissioners of such department stated the amount at twenty-nine and seventy-three $\frac{50}{100}$ dollars.

9. Certifying an allowance of a bill of the Journal of Commerce twice.

10. In May, 1881, certifying a claim of Julia Richter at $70, and on the same day certifying allowance of similar claim of John G. Schneider at $10, and on October, 1881, certifying a judgment in favor of Ernest Conrades at the sum of $484.46, which included the two claims already certified, Conrades holding assignments of both claims.

11. Certifying a claim of Frank & Dubois for premiums on policy of insurance, although neither voucher nor bill indicated the property insured nor the period of time covered by the insurance.

12. Failure to cancel coupons pursuant to instructions given.

And, finally, that he had not properly drilled his assistants.

It seems to be clear that no fault can be imputed to the relator in the matter of the audit of the coupons. The duties of the auditor did not call upon him to see whether or not coupons of the numbers presented with the vouchers had been previously paid or not. The auditor had no means of knowing this fact, no record being kept in the auditing bureau of the particulars of such claims. The duty of ascertaining this fact rested with the clerks preparing the vouchers and certifying them to the auditor. That portion of the clerical work was entrusted to others, and when it was properly certified to the auditor, he was under no obligation to examine the records of another bureau to see whether or not its clerks had done their duty. It may be claimed, however, that it was negligence upon the part of the auditor not to have noticed the similarity of the numbers of the coupons mentioned in the voucher; but it surely cannot be expected of the auditor that he should remember the details of every voucher coming under his notice so as to detect similarities in view of the vast number upon which he was called upon to pass, especially after the clerks whose duty it was to certify the vouchers to the auditor have given him a certificate of the validity of the claim. Whatever fault there may have been in the payment of duplicate coupons, it certainly does not rest upon the relator, but upon other clerks of the department for whose shortcomings the relator is not responsible.

The second charge, viz:—Dilatoriness in attendance whereby delay was caused in auditing claims—is too general a charge to need much attention. No time or times are mentioned, no case designated in which any delay occurred in the auditing of any claim. The relator was powerless to disprove so general a charge as this, and it was altogether too vague to be susceptible of explanation as there was no point to which such explanation could be directed.

The relator seems to have given a complete answer to the third charge, in that the course pursued had been desig-

nated by one of the defendant's predecessors, and no change had ever been made prior to the drawing of the voucher and warrant mentioned in the charge.

The alleged neglect which forms the basis of the fourth charge seems to have been that of an assistant auditor whose duty it was to see that extensions and additions were correct, and whose certificate of correctness appeared upon this voucher. If another clerk of the department was charged with this duty, it certainly formed no part of the duty of the Auditor to do the work over again, any more than it was the duty of the comptroller to do so after the voucher had been certified to him by the Auditor.

The charge in respect to the certification of the bill of William Walgrain seems to present a question of great gravity, and where the relator has been guilty of neglect or oversight for which he is personally responsible, whether the neglect was of such a character as to call for the removal of the relator, is one to be determined by the conscience of the removing officer, and cannot be reviewed by this court.

It is true that the Auditor of the Board of Education certified to an untruth, but it was the duty of the Auditor to examine and allow the voucher and see that the certificate of the Auditor of the Board of Education was correct, so far at least as the vouchers furnished enabled him to do so, and it appeared plainly from the papers annexed to the vouchers that an error had been committed. The certificate of the relator was, "My reason for the allowance thereof is that I find the supplies were furnished on proper authority, and the prices certified are reasonable and just."

In order to make this certificate the Auditor should have examined the papers accompanying the voucher, and such examination would have disclosed the error made by the Auditor of the Board of Education, and it does not seem to be any answer to say that reliance was placed upon the certificate of the Auditor of the Board of Education.

The charge of not noting erasures, in the absence of any

rule of the department in respect thereto, does not call for comment.

The next ground of complaint related to the certification of a bill of the Law Department in advance of the certification thereof by the head of the department.

It would appear that this was a bill of the Law Department for disbursements made by it in the discharge of its duties. Each item of expenditure was vouched for by a receipted bill and the claim certified and sworn to by the chief clerk of the Law Department, who had made the disbursements. The bill was transmitted to the Finance Department for payment, and the bill was audited upon the same proof as had been before required. The auditor does not seem in this instance to have been guilty of any neglect.

The charge as to the certification of the bill of Duryea is too trivial to merit a moment's notice.

The claim of negligence in certifying a bill of the Journal of Commerce twice does not seem to be at all supported by the facts. It is conceded that the Trustees of the College of the City of New York had the power to incur expenditures of this character, and at different times vouchers for apparently different services, duly certified by the trustees, were presented and allowed. Where the error of the Auditor, unless he is expected to carry in his mind every bill for $12 audited by him, does not appear.

The next charge is certifying the bills of Richter and Schneider, and allowing the claims in the judgment of Conrades, seems to be fully met by the explanation given by the Auditor.

The judgment was entered pursuant to the advice of the comptroller, and was certified as correct by the counsel to the corporation, and when allowed by the auditor the warrant for the claims included in the judgment were directed to be withheld. There does not seem to have been any great degree of negligence in this proceeding.

It is claimed that the Auditor was negligent in allowing a claim for insurance, although neither the voucher nor the

bill thereto annexed indicated the property insured nor the period covered by insurance. This bill was certified to by the Trustees of the College of the City of New York, it is true, but certainly, without knowing what property was claimed to be insured, the Auditor could not know whether the expense was or was not authorized by law as certified by him.

The failure to cancel the three coupons, as had been the practice, does not seem to have been of any importance. The most that can be said is that the Auditor undertook to cancel the coupons in a particular way, and if by reason of his failure to carry out his own voluntary practice the city had been put to the hazard of loss, some complaint might have been made against the Auditor; but for aught that I am able to see, he might have discontinued the practice altogether without having been guilty of negligence—other perfectly adequate safeguards against repayment having been used.

The general allegation as to assistants is too indefinite to merit the name of a charge.

I have felt it necessary to refer to these charges at length because of their serious nature, and because an examination of them tended to show, as I think, that in respect to all but two of them, and they of minor importance, it was attempted to charge the relator with the omission and mistakes of others over whose proceedings the relator had no control and for whose sins he certainly was not answerable.

But in relation to the bills of Walgrain and of Frank & Dubois, the relator did not exhibit that degree of care which the duties of his office required of him, and although it is not claimed that any damage resulted to the city, yet it is was for the head of the department to say whether in his judgment the offense was sufficiently grave to justify the dismissal of the officer. It was some evidence of negligence, and as we cannot weigh the evidence so as to substitute our judgment for that of the removing officer, although we may be of the opinion that the punishment

far exceeded the offense, we cannot reverse his action because of that reason.

The writ must be dismissed with costs.

J. F. DALY and VAN HOESEN, JJ., concurred.

Writ dismissed, with costs.