In the Matter of the Application of PAUL J. KERN and WALLACE S. SAYRE, Petitioners, for Orders Pursuant to Article 78 of the Civil Practice Act against FIORELLO H. LAGUARDIA, as Mayor of the City of New York, and Others, Respondents.

First Department, July 13, 1942.

*S. Stanley Kreutzer* of counsel [*Samuel Kreutzer* and *Martin H. Selman* with him on the brief; *Kreutzer, Hauser & Selman,* attorneys], for the petitioners.

*Paul Windels* of counsel [*Stewart W. Bowers* with him on the brief], for the respondents.

*Samuel D. Smoleff*, of counsel for the Citizens Union of the City of New York, City Affairs Committee, Community Councils of the City of New York, New York City League of Women Voters and Women's City Club of New York, as *amici curiæ*.

PER CURIAM. We find that the petitioners were removed from office for cause, and after a public hearing, in accordance with the provisions of law. (Civ. Serv. Law, § 11, subd. 6.) In the case of a removal of a municipal civil service commissioner by a mayor, as distinguished from removal by the State Civil Service Commission (cf. Civ. Serv. Law, § 11, subd. 6), the only statutory requirements are for a public hearing, and that some cause for removal exists.

Comparison of the provisions contained in section 11 of the Civil Service Law relative to the removal in the two instances referred to, discloses that the mayor is given much broader powers than the State Civil Service Commission with respect to the grounds of removal, and that less stringent requirements are imposed with respect to the nature of the hearing to be accorded. We think, however, that reasonable notice of the charges should be given, and that such notice should be sufficiently specific to enable the officers to meet the issue as to the alleged existence of cause for removal. This much is to be implied from the statutory provisions.

The cause for removal must be substantial, and not trivial. It must have some relation to the fitness of the commissioners to perform their duties as public officials, and there must be sufficient evidence to support the charges. The courts are not justified in interfering with removal if these legal requirements are complied with. (*People ex rel. Guiney* v. *Valentine*, 274 N. Y. 331; Civ. Prac. Act, § 1296.)

The record established that petitioners were removed because they issued to the public press of the city of New York a false statement concerning the corporation counsel of the city of New York reading, in part, as follows: " The failure of the Corporation Counsel to represent us will not deter our action in the least. If we were permitted to defend the merit system only when the Corporation Counsel chose to help us the merit system would be at the mercy of any politically minded lawyer who happened to hold that job. We have not forgotten that the present Corporation Counsel supported Ed Flynn's candidate for Mayor against LaGuardia in 1933 and it is not surprising, therefore, that he should refuse to represent us in our efforts to put Ed Flynn's favorities out of the Register's Office and replace them with competitive employees."

The words contained in the foregoing statement charged betrayal of his trust by the corporation counsel, and were obviously defamatory.

The issuance of the press release had followed a court proceeding involving the reclassification of certain positions in the civil service. This reclassification had been approved by the State Civil Service Commission and the Governor of the State. The corporation counsel had advised the court that the mayor of the city of New York was not opposed to such reclassification. Petitioner Kern, nevertheless, desired to take a contrary position. The press release quoted above had been issued after the termination of the court proceeding.

We find that the charges upon which removal was based were substantial; that they were sustained by the evidence; that the notice of the charges was sufficient, and that the removal of petitioners took place after a public hearing.

Though the written notices of charges served on the petitioners did not disclose what particular acts of misconduct were being complained of, the record establishes that before the hearing commenced petitioners were advised that the charges were based solely on the issuance by them of the press release defaming another public official.

The falsity of the statement made against the corporation counsel was established *prima facie* by the release itself, and by the statements made by the mayor at the opening of the hearing as to matters within his personal knowledge. Where an administrative officer conducting a trial of charges has personal knowledge of matters involved in such charges, it is not essential that other witnesses be called to establish the facts known to the trial officer. (*Sharkey* v. *Thurston*, 268 N. Y. 123, 128.) The mayor stated at the opening of the hearing that in an interview held a week before the issuance of the press release, he had advised President Kern that the position taken by the corporation counsel concerning the court proceedings had been agreed to by the mayor. President Kern testified at the hearing of the charges that he had advised Commissioner Sayre of his interview with the mayor. Knowledge of the falsity of the statement contained in the press release was thus brought home to both petitioners. The question presented is whether the making of a statement of this character out of court which was false, and known by the commissioners to be false when made, constituted an offense sufficiently aggravated to be cause for removal.

The statement, made without justification, which was the basis of the charges tended to besmirch the reputation and impair the

usefulness of a public official whose duties included representation of the municipal civil service commission in the enforcement of the Civil Service Law. The mayor, we think, had the authority to find that the making of such a statement did constitute cause for removal, and that it bore a direct relation to the usefulness and fitness of petitioners to carry on their duties as civil service commissioners.

The determination should be confirmed, with fifty dollars costs and disbursements, and the petition dismissed.

Present — MARTIN, P. J., TOWNLEY, GLENNON, COHN and CALLAHAN, JJ.; MARTIN, P. J., dissents.

MARTIN, P. J. (dissenting). In this case we are not interested in personalities or in the controversy between the mayor and his former secretary. Far transcending in importance are the principles of the merit system for municipal employees administered through civil service, which should be protected by the courts.

The petitioner Paul J. Kern was appointed by Mayor LaGuardia as a municipal civil service commissioner and president of the commission on June 1, 1940, for a full term of six years, to expire on May 31, 1946. On or about August 1, 1938, the petitioner Wallace S. Sayre was appointed by Mayor LaGuardia as a municipal civil service commissioner for a full six-year term, expiring on May 31, 1944. It is important to note that in accordance with the provisions of subdivision 1 of section 11 of the Civil Service Law, the full terms of commissioners are for longer periods than that of the mayor and that the terms are overlapping. Subdivision 6 of the same section provides: " The mayor or other duly authorized appointing authority may at any time remove any municipal civil service commissioner for cause and after ? public hearing * * *."

The term " for cause " means substantial cause and not a mere subterfuge for removal. (*People ex rel. Campbell* v. *Campbell*, 82 N. Y. 247; *Matter of Griffin* v. *Thompson*, 202 id. 104, 110.)

On Friday, February 6, 1942, the petitioners were notified to show cause on the following Monday, February 9, 1942, at eleven o'clock A. M., why they should not be removed from office " for conduct unbecoming a Civil Service Commissioner and making a deliberately false and untrue statement concerning official matters and insubordination all to the injury of civil service and contrary to the interest of the City of New York and the duties which you are by law charged to perform."

In the haste to serve the notice the place for the hearing was omitted. That omission was corrected by a paper served on the

petitioners on Saturday, February 7, 1942, which specified that the hearing would be held in the mayor's office at City Hall. In the meantime, the petitioners, whom the mayor had purported to " suspend " from office, were " locked out " of their offices and refused permission to obtain papers or other documents which they say were necessary for the preparation of a defense to the charges.

On the return day the mayor read the charges and then declared that the hearing was to be confined to two charges only, " conduct unbecoming a Civil Service Commissioner and making a deliberately false and untrue statement concerning official matters." He then read from a prepared statement, a copy of which was given to the petitioner Kern and to the press while the mayor was reading it aloud. It is alleged, and not denied, that Commissioner Sayre was not at any time given a copy of the charges. The mayor's statement was to the effect that the charges were based upon a release issued on February 5, 1942, by the civil service commission containing the following: " The failure of the Corporation Counsel to represent us will not deter our action in the least. If we were permitted to defend the merit system only when the Corporation Counsel chose to help us the merit system would be at the mercy of any politically minded lawyer who happened to hold that job. We have not forgotten that the present Corporation Counsel supported Ed Flynn's candidate for Mayor against LaGuardia in 1933 and it is not surprising, therefore, that he should refuse to represent us in our efforts to put Ed Flynn's favorites out of the Register's Office and replace them with competitive employees."

The petitioners, as civil service commissioners of the city of New York, were entitled to proper notice and a full and fair hearing after being given an opportunity to prepare a defense. (Matter of Healy v. Blount, 243 App. Div. 675.) The petitioners were deprived of their rights. They were called before the mayor and then for the first time the vague, indefinite charges were replaced with the more definite accusations arising out of the press release concerning Corporation Counsel Chanler. Because of a failure properly to notify the petitioners of the particular charges and the failure to give them an opportunity to prepare a defense and to call witnesses in support thereof, the order of the mayor removing the petitioners should be vacated and the petitioners should be reinstated. (Matter of Bender v. Board of Regents, etc., 262 App. Div. 627, 632.)

In addition, an analysis of the original charges against the petitioners as set forth above fails to disclose any serious offense warranting a removal. The statement contains three sentences. The first is, " The failure of the Corporation Counsel to represent

us will not deter our action in the least." No improper conduct can be based on that statement. The second is, " If we were permitted to defend the merit system only when the Corporation Counsel chose to help us the merit system would be at the mercy of any politically minded lawyer who happened to hold that job." Not only is that statement true, but, in my opinion, not even the mayor could take exception to it. The third is, " We have not forgotten that the present Corporation Counsel supported Ed Flynn's candidate for Mayor against LaGuardia in 1933 and it is not suprising, therefore, that he should refuse to represent us in our efforts to put Ed Flynn's favorites out of the Register's Office and replace them with competitive employees." This latter statement did not refer to the mayor but to a department official of equal grade with the commissioner. Considered in its full meaning, that statement is merely that the commissioners were not surprised that the corporation counsel acted as he did.

It is argued that by innuendo the words quoted may be construed in a certain manner. On a hearing to remove civil service commissioners the mayor may not accomplish such purpose by use of a so-called " innuendo " to enlarge, magnify or distort the words of the commissioners. The libel law is cited to support the contention that an innuendo may be used. The law of libel has no application. If the statement is susceptible of an innocent construction, it cannot be made the basis for the removal of a public officer by a so-called innuendo. In my opinion, the words themselves, unsupported by an innuendo, cannot be construed as imputing improper motives to the corporation counsel for his refusal to represent the petitioners. They merely call attention to the natural reluctance of that official to act adversely to friends.

The alleged charges upon which the commissioners were removed were not substantial or of such character as to warrant the drastic action taken by the mayor. The reasons assigned for the removal must appear, upon their face, to justify the action; in other words, they must be substantial and not frivolous. (*Matter of Griffin* v. *Thompson, supra.*) Trivial charges are insufficient to warrant a removal. (*People ex rel. Kelly* v. *Kirchwey*, 177 App. Div. 706.) In *People ex rel. Van Tine* v. *Purdy* (221 N. Y. 396, 399) the court said: " The cause assigned must not be a mere whim or caprice of the one clothed with the power of removal, a mere subterfuge to get rid of the person holding the position; on the contrary, it must be of substance, relating to the character, neglect of duty or fitness of the person removed to properly discharge the duties of his position."

Perhaps, the mayor, being naturally sensitive, was shocked by the criticism of his corporation counsel, but that is not sufficient to warrant the removal of the commissioners. The record discloses that throughout the hearing the mayor contended that the petitioners had the burden of showing why they should not be removed. The burden was on the mayor to establish charges warranting their removal.

The commissioners should not be removed on any mere pretext. To permit a mayor to remove civil service commissioners on a pretext or because he is personally dissatisfied with the manner in which they conduct their office and because there is friction between them is to ignore the law and would destroy the merit system in civil service. (*Matter of Griffin* v. *Thompson, supra; People ex rel. Keech* v. *Thompson*, 94 N. Y. 451.)

Subdivision 1 of section 20 of the Civil Service Law provides that it shall be unlawful for the comptroller or other fiscal officer of the city to pay salary or compensation to any officer, clerk or other person in the classified service of the city unless an estimate, payroll or account for such salary or compensation shall bear the certificate of the municipal civil service commission that the persons named were " appointed or employed or promoted in pursuance of law and of the rules made in pursuance of law." That section requires that the commissioners be satisfied that the persons are properly appointed or employed. The petitioners were of the opinion that the " covering in " of the particular employees in the office of the register was improper. In support of that conclusion they had been furnished with a memorandum of law issued by an assistant corporation counsel of the city of New York. In view of their sworn obligation to administer the Civil Service Law properly the petitioners were justified in opposing the appointment of the particular employees and no improper motive has been assigned for their action in so doing.

The petitioners state that the real reason for their removal may be found in their refusal to obey illegal demands made upon them by the mayor. Civil service commissioners are not under the personal supervision or control of the mayor. They should be fearless and independent and should not be mere pawns in the hands of the mayor or other appointing officer. An examination of the affidavit and exhibits annexed thereto interposed by the petitioners in support of their petition, leads to the conclusion that the mayor was of the opinion that the commission must act as he directed whether his orders were legal or illegal. They also disclose that friction existed between the mayor and the commissioners as a result of the refusal of the latter to do the mayor's bidding. The affidavit contains the following:

" The defendant LaGuardia has frequently ordered the Civil Service Commission to perform illegal, improper and unscrupulous acts. Your petitioners in such instances have refused to perform said acts. Such refusal frequently resulted in intemperate and abusive attacks on the Commission by the Mayor. Some few of the many instances which have occurred within the last two and one-half years follow:

" First: The Mayor on occasion personally attempted to re-rate examination papers, after such papers had been carefully and properly rated by expert examiners of the Commission legally employed for that purpose. One such instance was the case of R———, who was a candidate for Supervisor Grade 4 in the Welfare Department. R—— took the civil service examination and failed. . The Mayor took a special interest in her case and he improperly ordered the Commission to pass her after she had failed. The Commission received a written communication from the Mayor, reading in part as follows: ' I have yours of September 29, 1939 in re the case of R——. This does not answer the matter at all. For the thousandth time I repeat — I read the paper and the woman passed.' The Commission did not re-rate this paper in accordance with the Mayor's demand. A copy of that communication is annexed herewith as ' Exhibit 1-A.'

" Second: On another occasion, the Mayor was dissatisfied with the persons passing or failing in a promotion examination. He thereupon ordered the Commissioner of Investigation to investigate the examination. When the investigation failed to disclose any impropriety, the Mayor ordered the civil service examiners who worked on this examination, to be subpœnaed to the office of the Commissioner of Investigation on a Saturday afternoon. Despite the fact that the Mayor had no disciplinary authority over them, they were then and there ordered to take the test themselves. These examiners had duly secured their positions by passing the civil service examination for Examiner, and yet they were ordered to take this test for clerk. On the basis of this unique plan for humiliation, the Mayor improperly ordered the Commission to take disciplinary action against them. The said examiners had excellent records of twenty-two, twenty-six and thirty-eight years respectively of unblemished service to the City of New York. The chief examiner properly refused to submit to this program of humiliation. The Mayor ordered the Commission to discharge the chief examiner and wrote to the Commission as follows: ' I consider the conduct of Chief Examiner Upshaw highly improper, indicating indifference to her duties, and insubordination. Therefore I expect the Commission to take immediate

and appropriate action.' The other two examiners were also subjected to the Mayor's ire, because of their failure to pass his favorite candidates. Concerning them he said: ' Action should be taken in reference to examiner Galston and Ellisson. Seemingly they are not competent to perform their duties. * * * Please acknowledge receipt and keep me informed of the action taken as here-above suggested.' The Commission rejected the Mayor's arbitrary and illegal order. A copy of the Mayor's communication is annexed hereto as Exhibit ' 1-B.' * * *

" Eleventh: That on a number of recent occasions the defendant LaGuardia ordered the Civil Service Commission to perform illegal, improper, or unscrupulous acts. Your petitioners constantly refused to perform said illegal and improper acts, or to yield to the Mayor's intimidation. As a result the Mayor threatened and attempted to intimidate the petitioners herein by orders of removal, and charges of insubordination.

" On one occasion the Mayor, after being frustrated in an effort to compel an improper act by the Commission became enraged and ordered the City Treasurer to withhold the salaries of petitioners for an extended period, as a means of intimidation. On several other occasions, the Mayor orally ordered his office to advise petitioners that unless they performed various illegal acts they would be forthwith removed. On some occasions the Mayor actually orally ordered suspensions of the Commission. On another occasion the Mayor demanded the undated resignation of petitioner Kern for his refusal to perform an improper act."

Exhibit " 1-B," referred to above, reads in part as follows:

" CITY OF NEW YORK
Office of the Mayor
" *December* 15, 1939.

" The Municipal Civil Service Commission,
299 Broadway,
New York City.

" GENTLEMEN: I regretfully submit herewith report of findings of facts by the Commissioner of Investigations, submitted to me at my direction, covering the examination, Promotion to Clerks, Grade 3 and 4. I personally directed the Commissioner to proceed in this matter along the lines indicated in the report for the purpose of obtaining a true test.

" I consider the conduct of Chief Examiner Upshaw highly improper, indicating indifference to her duties, and insubordination. Therefore I expect the Commission to take immediate and appropriate action.

" Action should be taken in reference to Examiner Galston and Ellisson.  Seemingly they are not competent to perform their duties.  *  *  *

" Very truly yours,
(In script) F. H. LaGuardia,
" Mayor."

Many other serious charges of shocking and improper interference by the mayor with the work of the civil service commission are made, but the above, which are supported by written evidence, are sufficient to show the attempted coercion of the commissioners and a wanton disregard of the rules governing civil service.  This record discloses that the mayor was dissatisfied with some of the commissioners and no doubt was anxious to replace those who had so often disagreed with him and refused his demands.

I have reached the conclusion that the petitioners were not given a proper notice of the charges upon which they were eventually removed.  They were not accorded a fair hearing or an opportunity to prepare such a defense as they considered necessary and were refused an adjournment to enable them to do so.  The charges were not substantial.  They were trivial, and evidently used as a pretext to remove the commissioners who would not perform the illegal acts directed by the mayor.

The record does not support the finding of the mayor that the. charges were sustained and, therefore, the action of the mayor in removing the petitioners from the civil service commission of the city of New York should be vacated and the commissioners reinstated.

Determination confirmed, with fifty dollars costs and disbursements to the respondents, and the petition dismissed.