■ In the Matter of ROBERT PUENTES, Petitioner, v. BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 21 OF TOWN OF BETHPAGE, Respondent.— Proceeding pursuant to article 78 of the CPLR, to review and annul the determination of the respondent Board of Education, made November 12, 1963, after a public hearing on written charges under section 3012 of the Education Law, which: (1) suspended petitioner from his position of teacher in the Bethpage Senior High School from the date of the determination until the end of the then current school year, June 30, 1964; and (2) directed petitioner to cease and desist from activities similar to those complained of in the charges, with notice that a recurrence of such activities will be treated as offenses warranting dismissal. By order of the Supreme Court, Nassau County, entered December 7, 1964 pursuant to statute (CPLR 7804, subd. [g]), the proceeding has been transferred to this court for disposition. Determination confirmed, with costs. The charges against petitioner were (1) conduct unbecoming a teacher and (2) insubordination. The specifications under the first charge were: (a) that petitioner authored a certain letter dated June 18, 1963 addressed to the respondent board, with respect to the subject of a certain probationary teacher not being re-engaged for the next school year, and caused the letter to be sent to the board and copies to be circulated to members of the administrative and teaching staffs within the school district; (b) that the letter defamed the administration of the school district as to professional matters, particularly the principal of the school in which the probationary teacher was serving; (c) that the probationary teacher did not consent to the circulation of the letter; and (d) that the circulation of the letter could endanger the probationary teacher's professional standing and advancement. Petitioner's signature on the letter was under the designation of president of a certain organization of teachers. The specifications under the second charge were the same as those of the first, plus the claim that on June 21, 1963 the petitioner refused to answer questions put to him by the Superintendent of the school district concerning his activities in connection with the letter. Petitioner informed the Superintendent that he wanted to consult with counsel before answering the questions and he also claimed the right to refuse to answer them on the ground that they related to union activities. In our opinion, all the findings and conclusions of the board have substantial support in the record. However, we do not pass on the findings as to the issues with respect to the specifications designated (c) and (d) under the first charge, including the findings that the testimony of the witnesses, Mrs. Vredenburgh and Mr. Martin, was unworthy of belief. It is not necessary for us to pass on those findings in order to reach our decision. Although a public employee may, with impunity, express himself freely in general, such expression is subject to the proviso that he shall not impair the administration of the services in which he is engaged, thereby impairing his own usefulness and fitness to carry on his duties (*Matter of Sausbier* v. *Wheeler*, 276 N. Y. 246; *Matter of Kern* v. *La Guardia*, 264 App. Div. 627, affd. 289 N. Y. 776; *Jepsen* v. *Board of Educ.*, 19 Ill. App. 2d 204). This limitation applies particularly to a school teacher, for he " works in a sensitive area in a schoolroom " and the authorities " must preserve the integ-

rity of the schools" (*Adler* v. *Board of Educ.*, 342 U. S. 485, 493; see, also, *Beilan* v. *Board of Educ.* 357 U. S. 399, 405; cf. *Matter of Cohen*, 9 A D 2d 436, affd. 7 N Y 2d 488 [remittitur amd. 8 N Y 2d 754], affd. *sub nom. Cohen* v. *Hurley*, 366 U. S. 117, mot. for lv. to petition for rehearing den. 374 U. S. 857). Petitioner's letter was not merely a plea or protest with respect to whether Miss Coelho's merits as a teacher had been misjudged. It was not sent solely to the specific official or officials who had jurisdiction to act on the subject of whether Miss Coelho ought to be re-engaged. The letter included an intemperate and condemnatory attack upon the school authorities; it was clearly designed to embarrass them; and it would tend to impair the administration of the school district's services. While the letter was addressed to the board, copies of the letter were also sent to members of administrative and teaching staffs within the school district. Among other things, the letter stated that the faculty had a "dangerously low" respect for the district's procedures; that "personal considerations", the "whim" of Miss Coelho's principal and "political considerations" dictated the decision not to re-engage Miss Coelho; that the principal had resorted to "a shabby excuse" to support the said decision; and that the school administration was generally guilty of deeming its rights to be "divine," of "hypocrisy," and of using "sham, jargon, or juggled statistics." It is clear that Miss Coelho's plight was capitalized as affording an opportune occasion for this attack upon the school officials. Ughetta, Acting P. J., Christ, Brennan and Hopkins, JJ., concur; Rabin, J., dissents and votes to annul the board's determination, with the following memorandum: In my opinion, under the circumstances here, the charges of conduct unbecoming a teacher and insubordination, emanating from the letter of June 18, 1963, which was circulated over petitioner's signature as president of the Bethpage Federation of Teachers-Local 1379, do not constitute sufficient legal ground for the disciplinary action taken against petitioner. I recognize that situations may arise where the nature of the criticism of a superior may be such as to constitute insubordination or conduct unbecoming the employee. However, in each case we must balance the need for proper discipline with the overriding principle of freedom of expression which has so recently been given greater protection by the highest courts of the land. When viewed as a whole, the letter in question clearly was only a vigorous protest against the actions, the policies and practices of the local board of education, even though the letter was interspersed with several intemperate or improvident remarks. In sum and substance, it reflected nothing more than an expression of the petitioner's opinion concerning a matter upon which he was particularly qualified to speak and as to which he clearly had the right — if not the obligation — to voice an opinion, not only individually but in his representative capacity. It is my view that, *when read in context*, all the statements therein contained do not exceed the bounds of fair comment and criticism on a subject relating to a matter of public interest and concern (cf. *Matter of Gersh* v. *Village of Tuckahoe*, 23 A D 2d 258). Discussion "on public issues should be uninhibited, robust, and wide-open, and * * *may well include vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials" (*New York Times Co.* v. *Sullivan*, 376 U. S. 254, 270; *Garrison* v. *Louisiana*, 379 U. S. 64). The policy and practices of a local board of education are obviously public issues of the greatest concern in the local community. That a public employee may express himself freely so long as he does not impair the administration of the service in which he is engaged, is clear. Legislative recognition has been given to such employee's right "to the expression or communication of a view, grievance, complaint or opinion on any matter relating to the conditions or compensation of public employment or their betterment, so long as the same is not designed and does not interfere with the full, faithful and proper per-

formance of the duties of employment" (Civil Service Law, § 108). I find nothing in petitioner's conduct or statements which would impair or adversely affect either the administration of the public service in which he was engaged or the proper performance of the duties of his employment. As to the claim that petitioner was further insubordinate in wrongly refusing to answer questions put to him during his interrogation by the School Superintendent: Such refusal was a qualified refusal; petitioner said he would not answer unless he had the advice of counsel. In the limited appendix method utilized in presenting the proceeding in this court, I find no ruling on the part of the School Superintendent to grant or deny such request for an opportunity to first consult with counsel. Consequently, in my opinion, this claim is incapable of present judicial review and should form no part of the decision herein.