**Julian C. TAYLOR, Plaintiff,**

v.

**NEW YORK CITY TRANSIT AUTHORITY and Civil Service Commission of the City of New York, Defendants.**

No. 67 C 582.

United States District Court, E. D. New York.

Jan. 6, 1970.

George J. Robertazzi, Brooklyn, N. Y., for plaintiff.

Sidney Brandes, General Counsel, New York City Transit Authority, Brooklyn, N. Y., for defendants.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

In differing forms, this matter has been extensively litigated before trial and appellate administrative agencies as well as *nisi prius* and appellate courts of New York State. Whether this Court should permit a collateral attack on these determinations raises vexing questions of federal jurisdiction, res judicata and state administrative law.

Plaintiff, a former employee of the defendant New York City Transit Authority (TA), seeks a declaratory judgment that his removal from employment was unlawful. He also seeks injunctive relief against enforcement of the determinations of the TA and the defendant Civil Service Commission of the City of New York (Commission) under which he was removed. Defendants have moved for dismissal and summary judgment under Rules 12 and 56 of the Federal Rules of Civil Procedure, and plaintiff has cross-moved for summary judgment. For the reasons stated below, defendants' motion for summary judgment must be granted and plaintiff's cross-motion denied.

### I. FACTS

The facts of this case are undisputed. Plaintiff was removed from his position as a Road Car Inspector with the TA after a departmental hearing and report by a referee recommending discharge because of an alleged incident involving an assault with a gun. The hearing was held on August 9, 1962, and the report was issued three days later. At the time of the hearing and report, the General Counsel of the TA, whose office was responsible for prosecuting dismissal actions, was Daniel T. Scannell. After the report was issued, the same Daniel T. Scannell was appointed a Member of the TA. Mr. Scannell and the Chairman of the TA, comprising the majority necessary for such action, then approved the referee's report and ordered the plaintiff's dismissal on September 4, 1962.

The plaintiff appealed to the Commission. After a hearing, at which the plaintiff was represented by counsel, the Commission affirmed the TA determination in June of 1963. More than one year later, plaintiff brought a proceeding to review the decision of the Commission in the New York State Supreme Court under Article 78 of the New York Civil Practice Law and Rules. It was dismissed on January 13, 1965 on the ground that the Civil Service Commission's determination was not arbitrary "in a legal sense" since, "with knowledge of all the facts upon which petitioner now bases his position, neither he nor his attorneys raised," the question of Mr. Scannell's conflict of interest.

On appeal, the Supreme Court, Appellate Division, unanimously affirmed the dismissal. That court found that petitioner knew or should have known of the conflict at the time of his appeal to the Commission. It relied on the additional grounds of expiration of the statute of limitations and laches. The court stated:

> We additionally find that petitioner knew, or should have known, at the time of his appeal to the Civil Service Commission, that Commissioner [sic] Scannell had taken part as a Member of the Authority in the adoption of the recommendations of the hearing referee. Therefore, in addition to the reasons stated by Special Term, we affirm on the grounds of expiration of the four month Statute of Limitations * * * and laches. Taylor v. New York City Transit Authority, 25 A.D. 2d 682, 269 N.Y.S.2d 75, 76 (2d Dep't 1966).

This decision was affirmed unanimously without opinion. Taylor v. New York City Transit Authority, 19 N.Y.2d 724, 279 N.Y.S.2d 181, 225 N.E.2d 886 (1967). Review was not sought in the United States Supreme Court. Instead, the present action was instituted in this Court.

## II. DENIAL OF DUE PROCESS AS A BASIS FOR JURISDICTION

Relief is claimed under the Civil Rights Act, 42 U.S.C. § 1983, and its companion jurisdictional provision, 28 U.S.C. § 1343, on the theory that plaintiff's employment was terminated without due process by state officials acting under color of state law.

In an administrative disciplinary system providing for separation of the roles of prosecutor and impartial trier, when the official responsible for prosecution changes positions and casts the deciding vote upholding the prosecution, a substantial due process issue is raised. Confusion between the roles of judge and advocate has been rightly distrusted in English law since the Middle Ages. H. Drinker, Legal Ethics 15 (1953). With possible exceptions not here relevant, the right to an impartial judge—one who has no interest in the outcome of a case before him and whose contact with the litigation does not suggest any reason for partiality—is required to meet minimum standards of due process. Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); cf. Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (based upon supervisory power over federal judiciary); Falcone v. Dantinne, 420 F. 2d 1157 (3d Cir. 1969) (union disciplinary hearing required to be "full and fair" under 29 U.S.C. § 411(a) (5) (C)). Where a man's livelihood is involved these standards apply to quasi-judicial administrative adjudications "which directly affect the legal rights of individuals." Hannah v. Larche, 363 U. S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed. 2d 1307 (1960). See Amos Treat & Co. v. S.E.C., 113 U.S.App.D.C. 100, 306 F. 2d 260 (1962); Trans World Airlines, Inc. v. C.A.B., 102 U.S.App.D.C. 391, 254 F.2d 90 (1958). Cf. Birnbaum v. Trussell, 371 F.2d 672, 677–679 (2d Cir. 1966).

While a substantial issue of due process is posed in the pleadings, the jurisdiction of this Court to consider that issue is unclear. Reviewing the authorities, the Court of Appeals for the Second Circuit in Eisen v. Eastman, 421 F. 2d 560 (2d Cir. 1969), found no authority in its decisions to support the proposition that the denial of due process, without more, in the dismissal of a governmental employee constitutes the deprivation of a "civil right" within the meaning of 28 U.S.C. § 1343. In its opinion in Eisen this Circuit apparently adopted the statement of Mr. Chief Justice Stone, concurring in Hague v. C.I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), that jurisdiction exists only if "the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights." But see, Note, The Proper Scope of the Civil Rights Act, 66 Harv.L.Rev. 1285 (1953). The Eisen Court left open the question of whether the deprivation of public employment without due process of law might constitute a basis for jurisdiction under 42 U. S.C. § 1983 and 28 U.S.C. § 1343, stating:

> Greater difficulty has been experienced with cases involving denials or revocations of licenses or discharges from public employment. These can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom. Eisen v. Eastman, 421 F.2d 560, 565 (2d Cir. 1969).

Although there is difficulty in applying Mr. Chief Justice Stone's Hague formulation to employment discharge cases, it would appear that such cases should, for jurisdictional purposes, be regarded as involving the deprivation of personal liberty. Certainly it cannot seriously be contended that a man's liberty is not diminished when he is denied the option of remaining in a government job vital to his own and his family's sustenance.

Life is a predicate for the exercise of the freedom to speak protected in Hague. It is significant that in Eisen this Circuit found no difficulty in categorizing King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) as a case involving liberty. It wrote:

> * * * it is quite arguable that King came within Justice Stone's formulation on the basis that Alabama's "substitute father" regulation not merely caused economic loss to Mrs. Smith's children, but also infringed their "liberty" to grow up with financial aid for their subsistence and her "liberty" to have Mr. Williams visit her on weekends. Eisen v. Eastman, 421 F.2d 560, 564 (2d Cir. 1969).

While a whole series of cases sustaining jurisdiction in this Circuit can be distinguished on the ground that each contained a plus factor such as conspiracy or denial of equal protection of the law, concern over denial of due process in the deprivation by the state of employment presents a common denominator for the exercise of federal jurisdiction. See, e. g., Kletschka v. Driver, 411 F.2d 436 (2d Cir. 1969); Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966). Cf. Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967); Madera v. Board of Education, 386 F.2d 778 (2d Cir. 1967); Krawez v. Stans, 306 F.Supp. 1230 (E.D. N.Y.1969); Knight v. Board of Education, 48 F.R.D. 115 (E.D.N.Y.1969). See also Cobb v. City of Malden, 202 F. 2d 701 (1st Cir. 1953); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964); Glicker v. Michigan Liquor Control Comm'n, 160 F.2d 96 (6th Cir. 1947); Progress Development Corp. v. Mitchell, 286 F.2d 222, 234 (7th Cir. 1961). The Courts of this Circuit have been told to use Justice Stone's Hague formulation, "generously construed." Eisen v. Eastman, 421 F.2d 560, 566 (2d Cir. 1969). In light of this instruction, precedent and reason, it must be concluded that this Court has jurisdiction to decide the issues plaintiff presents.

## III. RES JUDICATA AND COLLATERAL ESTOPPEL

### A. *State Court Proceedings*

■ The New York Supreme Court expressly held that under the applicable statutes it did not have the power to examine constitutional questions not raised before the Commission if they were known to exist when the matter was before the Commission. The failure of the plaintiff to raise before the Commission the constitutional questions that comprise the basis of his federal cause of action precluded a determination of the conflict question by the state courts. Matters which could not be passed upon by the court whose judgment is said to be res judicata cannot be regarded as foreclosed. International Rys. of Central America v. United Fruit Co., 373 F.2d 408, 418 (2d Cir. 1967); Restatement, Judgments § 62, comments j and k (1942).

■ The only other grounds relied upon by the state courts for the dismissal of the petition were the expiration of the statutory period of limitation and laches. Decisions on these grounds are not on the merits and do not create a judgment which is res judicata in another jurisdiction of all issues which might have been presented. Warner v. Buffalo Drydock Co., 67 F.2d 540 (2d Cir.), cert. denied sub. nom., Buffalo Dry Dock Co. v. Salkeld, 291 U.S. 678, 54 S.Ct. 529, 78 L.Ed 1066 (1933) (although the validity of the specific holding of this decision under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) may be questioned, the rule it enunciates applies in federal question cases); Hartmann v. Time, Inc., 166 F.2d 127, 138, 1 A.L.R.2d 370 (3d Cir.), cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); Flaherty v. Marsh, 268 App.Div. 380, 51 N.Y.S.2d 145, 150 (1st Dep't 1944); Restatement, Judgments § 49, comment a (1942).

■ While res judicata, in its primary sense, does not serve as a bar, this Court is bound under the doctrine of collateral estoppel to accept as true any material facts necessarily found by the state courts. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876). A finding that plaintiff or his attorney knew of the conflict when they appeared before the Commission was deemed necessary by the state courts to their decision. The Supreme Court, Special Term, in deciding that the Commission did not act arbitrarily "in a legal sense," relied upon this fact. It wrote:

> It cannot be said that the determination of the Civil Service Commission was arbitrary "in a legal sense" or otherwise in respect of the matters urged here, *since* with knowledge of all the facts upon which petitioner now bases his position, neither he nor his attorney raised any such questions before the commission. (Emphasis supplied.)

This finding of fact was upheld by the Appellate Division which utilized its finding of knowledge as a basis for application of the statute of limitations. It wrote:

> We additionally find that petitioner knew, or should have known, at the time of his appeal to the Civil Service Commission, that Commissioner [sic] Scannell had taken part as a Member of the Authority in the adoption of the recommendations of the hearing referee. *Therefore*, in addition to the reason stated by Special Term, we affirm on the grounds of the expiration of the four month Statute of Limitations (CPLR § 217) and laches. Taylor v. New York City Transit Authority, 25 A.D.2d 682, 269 N.Y.S.2d 75, 76 (2d Dep't 1966). (Emphasis supplied.)

Thus, in determining that the plaintiff or his attorney was aware of the conflict issue at the time of the appeal to the Commission, the state courts made a finding of fact necessary to the determination of the case before them, binding upon this Court. Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1954).

We turn now to the question of the res judicata effect of the Commission's

decision, bearing in mind the proposition we are bound to accept as true, namely, that plaintiff knew of the conflict he now relies upon when he appealed to that body.

### B. *Administrative Res Judicata*

■ Res judicata effect may attach to determinations of administrative agencies. Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L. Ed. 149 (1945); Industrial Comm'n of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). *Cf.* Berry v. Allen, 411 F.2d 1142, 1146 (6th Cir. 1969) ("the District Court, however, substituted its judgment for that of Kentucky officials whom the legislature entrusted to regulate the liquor traffic in that State. This even the Kentucky Courts could not do under their limited power of review."). The doctrine is not one that may be mechanically applied, for it involves a balancing of a defendant's rightful desire to be able to close the book on a dispute and a plaintiff's to obtain the just remedy he is entitled to under substantive law. The balancing is particularly delicate when individual constitutional rights and proper respect for a state's adjudicatory system are at stake.

■ A number of factors must be considered in determining whether res judicata effect should be given to the decisions of a state administrative body. Among them are: (1) the effect which such determinations are accorded by the courts of the jurisdiction within which they are made; (2) the type of hearing which is held and the procedures which are followed by the agency; and (3) the intention of the administrative body and the expectations of the parties before it on the question of finality. *See* Restatement, Judgments § 4 (1942); ALI, Restatement 2d, Conflicts of Laws § 92, and Reporter's Note, at 341 (P.O.D., Pt. I 1967). All of these tests suggest that the Commission should be regarded as an agency whose determinations are res judicata of all issues actually litigated, as well as of all issues that might have been litigated.

■ In New York State the determinations of administrative agencies acting in a judicial or quasi-judicial capacity are not open to collateral attack. Osterhoudt v. Rigney, 98 N.Y. 222, 234 (1885); In re Coyle v. Gabel, 26 A.D.2d 638, 272 N.Y.S.2d 878 (2d Dep't 1966), aff'd, 21 N.Y.2d 808, 288 N.Y.S.2d 636, 235 N.E.2d 775 (1968). The only means by which review may be had in such circumstances is through direct review, ordinarily in an Article 78 proceeding, combining elements of common law mandamus and certiorari. N.Y.CPLR 7801. If such review is not sought, or if it is sought and is unsuccessful, New York courts will regard the decisions of administrative agencies—including the municipal and State Civil Service Commissions—as res judicata.

The administrative trial and appellate procedure utilized by plaintiff is judicial in nature. Review of employment decisions by the Commission is adversarial, and both adequate notice and an opportunity to be heard are afforded. The right to representation by counsel is expressly granted. New York Civil Service Law § 76. Commission members are appointed for fixed terms of six years, are removable only for cause, and must be chosen from different political parties in an effort to secure non-partisan administration. New York Civil Service Law § 15, subd. 1(a). No restrictions are placed upon the powers of the Commission in the exercise of its appellate functions.

The statutes creating the Commission and defining its jurisdiction in these matters clearly are designed to permit great weight to be given to its decisions. There is good reason for the courts of New York to assume that the Commission's determinations of the rights of the parties appearing before it are final and conclusive.

Appeal to the Commission is provided as an alternate means of review of employment decisions to that which is

available in the courts. New York Civil Service Law § 76. *See, e. g.,* Edell v. Municipal Broadcasting System of City of New York, 9 Misc.2d 220, 169 N.Y.S. 2d 993 (Sup.Ct.1958); Cabral v. Gross, 76 N.Y.S.2d 338 (Sup.Ct.1947). Once an election is made and an appeal is taken to the Commission, the decision of the Commission "shall be final and not subject to review in any court." New York Civil Service Law § 76. Despite the conclusive language of this statute, New York's courts have held that review is possible if there is a total lack of evidentiary support in the record for the determinations of the Commission, or if its decision is purely arbitrary. On the basis of an analogy to the similar provisions of the New York Education Law § 310, if a constitutional decision is made incorrectly by the agency, that decision is subject to review in the courts. Matter of Puentes v. Board of Education, 24 A.D.2d 628, 629 (2d Dep't 1965) (Rabin, J. dissenting), aff'd, 18 N.Y.2d 906, 276 N.Y.S.2d 638, 223 N.E.2d 45 (1966), vacated and remanded, 392 U.S. 653, 88 S.Ct. 2271, 20 L.Ed.2d 1341 (1968), rev'd, 24 N.Y.2d 996, 302 N.Y.S.2d 824, 250 N.E.2d 232 (1969); Albaum v. Carey, 310 F.Supp. 594 (E.D.N.Y.1969). It is clear that the parties, the Commission and the courts expect the Commission's determinations to be final.

■ No compelling federal interest militates against according res judicata effect to the determinations of the Commission. Federal courts are not granted exclusive jurisdiction to enforce constitutional rights. *Compare* Lyons v. Westinghouse Electric Corp., 222 F.2d 184 (2d Cir.), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955), where the grant to the federal courts of exclusive jurisdiction was said to preclude giving res judicata effect to a state decision, *and* Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, 670, 64 S.Ct. 268, 88 L.Ed. 376 (1943), where full enforcement of res judicata concepts might have allowed violation of the anti-trust laws. So long as the state provides a reasonable means of asserting and vindicating federal constitutional rights and so long as this means results in defensible adjudications, the federal courts should grant them full faith and credit. 28 U.S.C. §§ 1738, 1739; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947). *See generally,* Note, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State-Court Determinations, 53 Va.L.Rev. 1360 (1967).

The states have a strong interest in creating administrative tribunals and in insuring finality for their determinations, subject to such judicial review as may be constitutionally required. They have a preeminent interest in the regulation and discipline of their own employees. Slochower v. Board of Higher Education, 350 U.S. 551, 559, 76 S. Ct. 637, 641, 100 L.Ed. 692 (1956) ("State has broad powers in the selection and discharge of its employees * * *"); *cf.* People of the State of New York v. Davis, 411 F.2d 750, 755 (2d Cir. 1969) (removal case; "basic responsibility * * * remains with the states"). The comprehensive New York system for disciplining governmental employees might be seriously shaken were collateral attacks to be permitted in federal courts and were we to fail to give res judicata effects to judicial and quasi-judicial determinations adverse to employees.

■ In the final analysis, plaintiff has simply failed to meet the reasonable requirement prescribed by the state that, having chosen to appeal to the Commission, he accord that body an adequate opportunity to pass upon his claim. Having knowingly failed to take advantage of state procedural opportunities, he cannot now assert that no opportunity to make his constitutional claim was afforded, and that this Court should refuse to accept the findings of the State's courts and quasi-judicial administrative agencies. *Cf.* Birnbaum v. Trussell, 371 F.2d 672, 679 (2d Cir. 1966). An analogy may be drawn to the writ of habeas corpus where, if there is a deliberate failure to exhaust state remedies, relief may be denied. Fay v.

Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This is so even though the writ protects the most fundamental of human liberties, it traditionally has been utilized to permit full judicial review in a collateral attack (*id.*, at 422–424, 83 S.Ct. 822; Townsend v. Sain, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)), and legislation explicitly permits such independent review (28 U.S.C. § 2254(d)). The requirements of comity should not be violated in the context of a civil rights suit such as this one.

## IV. CONCLUSION

The state provided an adequate means for the vindication of the plaintiff's constitutional interests. He could have sought direct review of the TA's action in the state courts. Alternately, he had the opportunity to assert his constitutional claim before the Commission. In providing these options, which plaintiff failed to exercise, the state afforded him due process of law, and the decisions of the state tribunals should now be accorded determinative effect.

The defendants' motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

So ordered.