Bertram Harnett, J.
Is a voting registrant over 18, but under 21, entitled to vote in the Democratic primary in Nassau County this September 14,1971? The question is simple to state, but the answer is not.
I. Legal Setting
Until Congress passed the Voting Rights Act Extension of 1970, there was no question whatsoever but that only people over *551 21 could vote in New York elections, primaries or otherwise. (N. Y. Const., art. II, § 1; Election Law, § 150.) Then came the Voting Rights Act Extension of 1970, in which Congress sought to reduce the voting age throughout the country to age 18. In sweeping terms, Congress declared that: ‘1 Except as required by the Constitution, no citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any primary or in any election shall be denied the right to vote in any such primary or election on account of age if such citizen is eighteen years of age or older ”. (P. L. 91-285, § 302; 84 U. S. Stat. 314.)
If the matter had rested there, and the statute were to be applied as written, 18-year-olds could freely vote in the 1971 primary.
But, before the legislative ink was dry, the constitutionality of the 18-year-old vote statute was attacked in court, culminating in the United States Supreme Court decision of Oregon v. Mitchell (400 U. S. 112) which, even at this early time, must be reckoned a landmark case. The Supreme Court said (p. 118): “ it is the judgment of the Court that the 18-year-old vote provisions of the Voting Rights Act Amendments of 1970 are constitutional and enforceable insofar as they pertain to federal elections and unconstitutional and unenforceable insofar as they pertain to state and local elections ”.
Predictably, a great swirl of confusion has arisen as a result of the Congressional act and its partial nullification. Some States already have an 18-yeár-old voting limit (Alaska, Georgia, Kentucky), so no problems arise there. But, some have voting ages above 18, but below 21 (see, opinion of Hablax, J., concurring in part and dissenting in part, Oregon v. Mitchell (supra, p. 213, n. 90), and the great bulk of the States continue age 21 voting systems. In those States which have voting ages above 18, the clarifying choices lie between (a) maintaining a dual voting age system for Federal elections, on one hand, and for State and local elections on the other, with all its concomitant problems, (b) lowering the voting age in that State for all elections to accord with the Federal 18, or (c) subscribing to a Federal constitutional amendment reducing all States’ voting ages to 18.
However, even while the controversy of political revision rages, there remains an election upcoming in New York in 1971. While the New York State Legislature is reported to be considering lowering the voting age by statute or State constitutional amendment, or as being agreeable to a Federal constitutional amendment, the fact remains that under presently *552 governing law, the age dichotomy persists in New York for the 1971 elections.
II. The Coming Election
On September óf 1971, the enrolled voters of the Democratic Party of Nassau County will vote for “ County Committeemen ” of their party (Election Law, §§ 12,13), and, also, will nominate their party candidates for various public offices to be filled at the general election in 1971. These particular public offices consist of a State legislator, various judgeships, and county and town officials. No Federal offices, such as Congress, United States Senator, or Presidential Elector (cf. Ray v. Blair, 343 U. S. 214, 224-225 ; Matter of Green, 134 U. S. 377, 379), are scheduled to appear on the primary ballot in 1971.
The Democratic county committeemen elected at the primary will serve for a two-year term, including 1972, during which there will be presidential and Congressional elections in Nassau County. Under New York law, county committee members are neither Federal, State or local officers, nor are they even public officers at all. (Public Officers Law, § 2 ; Matter of Neary v. Voorhis, 207 App. Div. 419 ; People v. Clampitt, 34 Misc 2d 766.) The applicable statute provides simply that they are " party officers ”. (Election Law, § 2, subds. 8 and 9.)
III. The Issue Becomes Joined
The plaintiff in this case, Patrick William Doherty, is a 19-year-old interim-appointed Democratic committeeman who claims that the county committeemen elected in the 1971 party primary will have a direct effect on the Federal elections in 1972. The defendant, County Board of Elections, essentially argues that the county committeemen are not national -or Federal officers, and that they do not figure significantly in Federal elections.
The 19-year-old Mr. Doherty has registered to vote with the Nassau County Board of Elections. He has also enrolled in the Democratic Party. By letter dated February 9, 1971, his attorney requested an opinion of the Board of Elections whether Mr. Doherty might be permitted to vote in the primary elections to be held on September 14,1971. There are in Nassau County two Commissioners of Election constituting the Board of Elections. In separate letters, each dated February 10, 1971, these Commissioners of Election rendered conflicting opinions. Acting on the opinion of the Nassau County Attorney, defendant Commissioner Meisser declared that Mr. Doherty would not be permitted to vote in the 1971 Democratic primary. Defendant Commissioner Cristenfeld opined that Mr. Doherty should be entitled *553 to vote in the primary, at least for the office of county committeeman.
It is apparent that unless the Board of Elections, made up of only the two Commissioners, takes an affirmative action to permit voting for Democratic county committeeman at the primary by newly registered 18-21-year-old voters, a large number of Democratic enrollees, including Mr. Doherty, will be unable to exercise that right of franchise. The Board of Elections can take such action only by agreement of its two Commissioners (Matter of Cristenfeld v. Meisser, 64 Misc 2d 296). While the Commissioners both express in their papers a union in sympathy for the 19-year-old Mr. Doherty’s point of view, they disagree as to the applicable legal fundamentals. This impasse left Mr. Doherty with the necessity to institute this proceeding if he is to vote in the 1971 Democratic primary. In the court’s opinion, there is posed a justiciable controversy with respect to plaintiff’s right to vote for county committeeman in the 1971 Democratic primary. This controversy is present, real, definite and substantial, and ripe for judicial determination. (Prashker v. United States Guar. Co., 1 N Y 2d 584, 592 ; Park Ave. Clinical Hosp. v. Kramer, 26 A D 2d 613, affd. 19 N Y 2d 958. See CPLR 3001.)
IV. Procedural Maneuvering
Commissioner Meisser moved to dismiss the complaint for failure to state a cause of action. In resisting the motion, Mr. Doherty had the written support of Commissioner Cristenfeld and also amicus curiae support from an organization known as the New Democratic Coalition. This court denied the motion to dismiss, for the principles announced in this opinion, pending an immediate trial of the issues of fact of the actual role of the Democratic county committeemen in the Federal election process. (CPLR 3211, subd. [c]; 3212.) Accordingly, the parties proceeded to trial of this action for declaratory judgment, waiving further answer by the defendant.
Defendant’s contention that the New York Secretary of State is a necessary party is lacking both in cited authority and apparent merit. That official has no function with regard to the primary election of Democratic county committeemen in Nassau County, and that is what this case is about, (cf. Election Law, §144.)
One final and puzzling procedural involvement separates us from the substance of the case. The plaintiff served this declaratory judgment action in the New York State Supreme Court on March 1,1971. On March 30,1971, the defendant served a notice of motion in the same court to dismiss the complaint on the mer *554 its, and asked this New York State Supreme Court for an order pursuant to CPLR 3001 declaring that the United States Voting Rights Act Extension of 1970 does not grant the plaintiff the right to vote in the 1971 Democratic New York State primary. The motion was returnable April 19, 1971, and was ultimately assigned to this court. None of the defendant’s moving papers raised any question whatsoever of Federal jurisdiction. On April 19,1971, the court requested oral argument of the parties, and at the stated mutual convenience of the parties, the argument was held in this court on April 30, 1971. At no time during this argument was any question of Federal jurisdiction raised. Defendant’s brief contained no reference to Federal jurisdiction. The court determined from the argument that there was sufficient probability of the requirement of a trial of some issues of fact for the parties to get themselves ready, pending this court’s determination of the defendant’s motion for dismissal or summary judgment. The court followed this expeditious procedure because both parties expressed to it their desire to expedite this action, which might require extensive appellate review. For the convenience of the defendant, over the objection of the plaintiff who wanted an earlier trial, a trial date was fixed at May 11,1971 at 10:00 a.m., unless the court dismissed the matter before them. There was no word from April 30 to May 10. Then in midafternoon of May 10, 1971, without notice or prearrangement, both counsel appeared in the court’s chambers, and defendant, while indicating his readiness to proceed with the trial, if necessary, for the first time stated a belief that a statutory three-Judge Federal court was the only proper forum for this action. When the court disagreed (see U. S. Code, tit. 28, § 2281 et seq.) the defendant apparently proceeded to the Federal District Court for the Eastern District of New York in Brooklyn, arriving there about 5:00 p.m., and eventually had a hearing before Federal District Court Judge Jack B. Weinstein at 8:00 a.m. on May 11, 1971, the very morning of the scheduled trial. According to counsel, Judge Weinstein denied defendant’s request for a preliminary injunction against these proceedings. (See Wright, Federal Practice and Procedure, § 46 [1971 Supp.].) The parties thereupon returned to this court, the motion to dismiss was denied orally, and the trial was in fact held on May 11, 1971. The defendant filed a supplemental brief which again contained no reference to the possibility of Federal jurisdiction. However, in argument during the trial, defendant urged for the first time that this court had no jurisdiction by virtue of section 2283 of title 28 of the United States Code and that the Federal District Court was the only *555 proper forum. The apparent view was that the State court, was seeking to impair the United States Supreme Court decision of Oregon v. Mitchell (400 U. S. 112, supra). This argument presumably rests on the position that Oregon v. Mitchell is dispositive of all the issues pertaining to the Voting Eights Act Extension of 1970, including constitutionality, and it therefore seems contradictory to the earlier thought of a statutory court to determine constitutionality.
In any event, the court rules this case is properly before it. The Supreme Court of New York State is one of general original jurisdiction in law and equity. Under section 7 of article VI of the New York State Constitution, its powers extend to actions declaring the legal rights and relationships between parties, including those set forth in CPLE 3001, and unless it plainly appears to the contrary, it has jurisdiction of actions brought before it. (Condon v. Associated Hosp. Serv. of N. Y., 287 N. Y. 411.)
This case involves construction of the Voting Eights Act Extension of 1970 (Oregon v. Mitchell, supra) the New York Election Law, and other authorities. There is no doubt that New York courts are not disqualified from cases merely because a determination may involve construction of Federal cases or statutes. (See Larkin v. Putnam’s Sons, 14 N Y 2d 399 ; Central Sav. Bank in City of N. Y. v. City of New York, 280 N. Y. 9, cert. den. 306 U. S. 661.) Unless otherwise prescribed by Federal statute, a plaintiff has the right to sue in either State or Federal court where appropriate bases of jurisdiction exist. (U. S. Code, tit. 28, §§ 1331, 1332 ; Judiciary Law, § 140-b ; Atlantic Coast Line R. R. Co. v. Engineers, 398 U. S. 281 ; Hyde Constr. Co. v. Koehring Co., 388 F. 2d 501, cert. den. 391 U. S. 905.) No such adverse statutory prescription was cited here. Not only has the plaintiff made his choice here, but the defendants too elected this forum to move to dismiss on the merits and to seek substantive relief from this court. Surely, the Nassau County Board of Elections cannot now term this court an inconvenient forum.
The statutory three-judge Federal court is available where the enforcement of a State or Federal statute is challenged on the ground of unconstitutionality (U. S. Code, tit. 28, §§ 2281, 2282) or in any other action where authorized by act of Congress (§ 2284). But, Oregon v. Mitchell has already determined the constitutionality of the Federal statute, and this case is governed by Oregon v. Mitchell. Moreover, the Federal court is not the exclusive forum for such claims, and they may be properly maintained in the State courts absent some specific limitation in the Federal law (National Land & Inv. Co. v. Specter, 428 F. *556 2d 91) and no such limitation appears here. Similarly, the Anti-Injunction Act (U. S. Code, tit. 28, § 2283) is not applicable. The court here seeks to interpret and follow, not disregard, Oregon v. Mitchell. This is not a case of jeopardy of a Federal judgment or exclusive jurisdiction. It is clear that State courts have concurrent jurisdiction with Federal courts to vindicate Federally granted rights. (Charles Dowd Box Co. v. Courtney, 368 U. S. 502 ; Taylor v. New York City Tr. Auth., 309 F. Supp. 785 ; Moran v. Paine, Webber, Jackson & Curtis, 279 F. Supp. 573, affd. 389 F. 2d 242. See, also, Wright v. Richter, 301 F. Supp. 1345.)
V. The Crucial Inquiry — How Do the County Committeemen Pertain to Elections f
We turn now to the merits of the case at hand. The language of Oregon v. Mitchell (supra, p. 118) is that the 18-year-old vote provisions of the Voting Rights Act Extension of 1970 are constitutional and enforceable: ‘ ‘ insofar as they pertain to federal elections and * * * [not] insofar as they pertain to state and local elections ”, (Emphasis supplied.)
The question of the case then is not whether county committeemen are Federal officers, but whether their functions and duties “pertain” to Federal elections. The defendant misses this important point by essentially analyzing Oregon v. Mitchell to mean that unless a primary is directly for a Congressional candidate, it cannot be lawfully governed by the Federal statute. But, Oregon v. Mitchell does not carve out a limited Federal position and leave the residuary to State or local officials any more than it does the reverse. It puts pertinency to Federal election on one hand, and puts pertinency to State and local election on the other. And the fact of the matter is the county committeemen are neither Federal, State nor local officers, nor public officers at all.
What is important is how do county committeemen of the Democratic Party in Nassau County pertain to elections? This is the crucial inquiry.
' VI. The Role of County Committeemen in the Nassau County Democratic Party
The Democratic Party is a major political party in New York State enjoying the privileges and responsibilities resident in that status by law. (Election Law, § 2, subd. 4.)
A. Party Organisation
The Democratic Party is organized in Nassau County on the basis of a county committee. (Election Law, § 12.) Two committeemen are elected by the enrolled Democrats in each of the *557 949 election districts in the county. The committeemen are the party’s basic workers at the election district level. They pass the petitions, ring the doorbells, solicit funds, talk to the voters, pass the word, bring out the registration and bring out the vote. The next echelon of the Nassau Democratic Party above the county committeemen of the election district is the zone, which is a grouping made up of a certain number of election districts, usually about 10. While the zone chairman, elected by the county committeemen, need not be a county committeeman himself, in practice, about 75-80% of the zone chairmen are in fact county committeemen. On the next level up the organization chart are the State committee members, one of whom is the leader in each assembly district. These party officials are elected by primary (Election Law, § 13), and, while few are currently committeemen, most all were committeemen at one time.
The county committee meets by convention at least once each year. It can be convened specially by the county chairman or by a petition of committeemen. The county chairman (county leader) and other officers of the county committee are elected by a county-wide convention of county committeemen.
The work of the Democratic county committee is accomplished between conventions by an executive committee made up of the officers of the county committee, the members of the State committee, the zone chairman, the president of the Nassau County Young Democrats, and the chairman of the law committee. The county chairman presides over the executive committee with the interim aid of the policy committee, which meets between meetings of the executive committee. This policy committee is a subcommittee of important members of the executive committee, being such officials as the county chairman, the State committee members, the chairmen of the Cities of Long Beach and Glen, Cove, and the chairman of the law committee.
B. Pertinences of County Committeemen to Elections
In reviewing the evidence at the trial, we find that there are four basic pertinences of membership on the county committee to elections, Federal, State and local.
1. Selection of Candidates
In New York State, Congressional candidates, like others, are nominated by primary. In Nassau County, under the Democratic Party by-laws, these primaries are preceded by designating conventions of the county committeemen. The names of the approved convention designees are placed on nominating petitions which are carried by the county committeemen throughout the applicable election areas to insure a place on the primary ballot for the convention designee.
*558 As a matter of law (Election Law, § 19), party funds may not be used for primary candidates (see Matter of Horn v. Regular Democratic Organization of Long Beach, 59 Misc 2d 664), and there is no limitation on nondesignees of the convention circulating petitions and getting on the primary ballot.
The defendant urges that under sections 131, 134 and 136 of the New York Election Law, primary candidates are designated by petition of individual voters who are then nominated by primary, and are not actually nominated by vote of the committee themselves. He goes so far as to claim in his brief that the committeeman has only the same power and capacity in the selection power as every qualified voter.
The court is satisfied, however, that the theory and the practice are materially different. The county committee of the Democratic Party is the organized force of the Democratic Party, and while so-called “maverick” or insurgent candidates can upset the political applecart, history has shown that the candidates supported and designated by the party organization, in the form of the organized county committee, are the candidates who in fact customarily prevail. The testimony reflected these realities to a startling degree. Of 24 party nominations for members of Congress made in Nassau County in the Republican and Democratic Parties between 1966 and the present, the designees of the organization were unopposed in 19 primaries, and were successful with the electorate in four of the five contested primaries. Overall, during the same period, 156 of 180 Democratic candidates designated by county committeemen for Federal, State, county, town and local offices were unopposed in the primaries. Of the 24 contested primaries, 16 were won by the designees of the county committee. The results were even more overwhelming in the Republican Party, where 176 of the organization designated candidates were unopposed in the primary election and, in the four contested primaries, the organization candidate was victorious in each.
Support of the organization of the county committee does not in and of itself guarantee a place on the ballot, nor does it insure primary success or electoral success. Yet it cannot be ignored that the presumptive legitimacy engendered by county committee backing, favored with its working resource, is a substantial factor. Insurgents or mavericks can and do prevail over organization-backed candidates, but not customarily, and not often without wrenching effort. Win or lose, the county committee is a focal force of substantiality within the electoral process, whether it be for Federal, State or local purposes.
*559 Congressional candidates, we have seen, are derived in these processes. Moreover, United States Senators are nominated at State conventions by members of the State committee similarly chosen through the primary route. Again, it is -the designees of the organization, flourishing the support and organization of the county committeemen, who, insurgent exceptions notwithstanding, prevail in elections of State committee members under the customary rule. And, electors to the national electoral college are selected in convention by the State committee members who are themselves elected in primaries, which experience the force of the county committee. Similarly, delegates to national nominating conventions are selected in primary elections in which the county committee members are assuredly a moving force.
2. Support of Candidates
Once a candidate receives a primary designation, he becomes the party’s choice. Again, exceptions notwithstanding, the nature of political organization is such that the party’s candidates for Congress, and for the Senate, and indeed the Presidential Elector candidates, among other public office seekers, are heavily dependent, both directly and indirectly, upon the support and effective work among the county committeemen, the working party element.
It seems scarcely arguable that county committeemen work most effectively for people and positions and processes in which they believe or have an interest. To sever the young end of the electoral spectrum from the party working ranks in the Federal elections is inconsistent with affording the vote in that spectrum. An unbalancing of electoral force must ensue.
3. Central Power of the County Committee
The county committee is the central power of the Nassau County Democratic Committee. It adopts the party by-laws and alone has the power at any time to amend them. It deals, in theory and in practice, with the whole spectrum of nomination, vacancy-filling, party conduct and campaign responsibility.
Party platforms of electoral issues are adopted by the county committee, for Federal elections as well as others.
Party officers, such as the county chairman, are elected by the county committee. Not' even the courts are cloistered from the knowledge of the de facto role played by county chairmen and other party leaders in selecting candidates, in forming issues, generating effort, and applying funds and facilities to elections of all sorts.
*560 4. Direct Powers of the County Committee Over Nomination of Candidates
Under subdivision 4 of section 137 of the Election Law a majority of the county committee from the appropriate political subdivision is required to permit the candidacy in a party primary of a person who is not an enrolled voter of that party for public office, including Federal offices. This is the so-called Wilson-Pakula Law. Moreover, members of the county committee may nominate candidates directly where there is a vacancy in a nomination previously made at a fall primary for Federal and other offices, unless the party rules provide an alternate procedure. (Election Law, § 140, subd. 3.) The members of the county committee may also nominate candidates for Federal or other office in the event a vacancy occurs in that office and a special election is held, unless the party rules provide otherwise. (Election Law, § 131, subd. 6.) The by-laws adopted by the county committee of the Nassau County Democratic Party currently delegate the power over those nominations to the county executive committee or the policy committee. (Nassau Democratic County Committee By-Laws, art. VII, § 2.) However, these provisions are at any time subject to amendment or revocation by vote of the county committee.
C. Necessary Conclusion
Quite plainly, the county committeemen are pivotal in the whole electoral process. Also, quite plainly, the county committemen pertain to both Federal elections and to State and local elections. A primary in which county committeemen are elected necessarily pertains to Federal, State and local elections, each in an important but indeterminate degree.
VI. Effect Must Be Given to the Substantial Role of County Committeemen in Federal Election,s
The Federal statute (P. L. 91 — 285, § 301 et seq.), taken by itself, would mandate a primary vote for county committeemen by 18,19 and 20-year olds. The State statute, on the other hand, which has not yet been amended to reflect the effect of the Federal Voting Rights Act Extension of 1970, still holds to a blanket age-21 provision. (See Election Law, §'§ 12, 150.) In thq instance of conflict between Federal and State law, the Federal law is supreme by virtue of section 2 of article VI of the United States Constitution.
Since the Democratic county committee is a substantial component of Federal elections, as demonstrated above, the Federal voting statute must be controlling on voting for these county *561 committeemen who manifestly pertain to Federal elections. And so, it must be for September 14,1971. Possibly, New York State or the Democratic Party could adopt a reasonable dual county committee system, or, in view of the differing age standards pertaining to Federal elections and State or local elections, might even be required to do so. Indeed, a staggering duality even now underlies the entire ‘ ‘ Federal 18 and State 21” scheme fostered by the Federal act and Oregon v. Mitchell (supra). Until one system comes into line with the other by further legislation or constitutional amendment, the problems of duality, the expense and the confusion will continue to arise. And so it appears for September 14, 1971 in New York.
We are faced here with realities and not with appearances or technical niceties. The law of the land is that 18-year-olds shall not be denied the right to vote in any primary pertaining to Federal elections. This is the holding of Oregon v. Mitchell (supra). No matter the view the jurisprudents take of the quirks or alignments of individual Judges of' the Supreme Court, no matter the sour taste left with some of an untidy duality in the electoral processes if there are two voting age limits, o.r even that it may be impossible to separate party functions of a county committeeman who is an integral part of the Federal electoral process, an 18-year-old must be accorded, under the mandate of the Congress and the Supreme Court, the right to vote for that county committeeman.
VII. Responsiveness and Reality
The Federal statute is unequivocal on 18-year-old voting in primaries, and Congress has the power to regulate the completeness of the Federal franchise right to the party or primary level. (Cf. United States v. Classic, 313 U. S. 299.)
In Oregon v. Mitchell, the court was mindful of the total electoral process. It spoke (p. 124) of the Congress’ “ ultimate supervisory power, over congressional elections ”, on the one hand, and then spoke, on the other hand, of the States’ right to determine (p. 125) “ the nature of their own machinery for filling local public offices ”,
The concern of the court in Oregon v. Mitchell, for a responsive electoral process is doubly articulated (p. 124, n. 7): “ Finally, and most important, inherent in the very concept of a supreme national government with national officers is a residual power in Congress to insure that those officers represent their national constituency as responsively as possible ”.
And again, the court states in substantially similar language (p. 134): “ Essential to the survival and to the growth of our *562 national government is its power to fill its elective offices and to insure that the officials who fill those offices are as responsive as possible to the will of the people whom they represent ”.
In American elections, political parties are manifest power establishments. The reality of power of the Democratic Party in Nassau County finds the county committeemen constituting its base. This base narrows pyramid-like to the apex of the National Democratic committee, in a distinct organization. The county committeemen are elected only by primary. Year in and year out it is their effort, their organized status under the law, their vote and their interest, which shape the candidates selected and the translation of that selection to actual candidacy. They figure in election campaigns, and in the projection of party issues and goals. Beyond these assignments of power, there are the circumstances of cross nomination and vacancy-filling which lie directly with the control of the county committee.
In an era when the law is subject to challenge for nonconsistency with good sense, where the substance of things is more than ever ascendant over institutional form, where inquiries of relevancy and credibility are increasingly launched at the process of legal decision, how can one ignore the unmistakable role of the county committeeman in the Federal electoral process, given our political party system? The operation of political parties and their association with the electoral process is conspicuously in American practice a fundamental second only to the election itself.
Our young people today audit with interest and acuteness the social operations of our world, and balance our results. In a case like this, where all sides proclaim sympathy with the widening of the vote franchise to younger people, no one is unaware of the reality of political apparatus in the United States. Indeed, how could it be otherwise for the young who are constantly importuned to get into the system to work governmental results. For the law to .suppose to them that the realities of political responsiveness dissolve before fine print and obsolete principle is (with due respects to the animal cartoon symbolism of the Democratic Party) to invite Mr. Bumble’s immortal comment in Dickens’ Oliver Twist (ch. 51) “ If the law supposes that * * * the law is an ass ”.
VIII. Ruling
Accordingly, this court rules that voters between the ages of 18 and 21 otherwise qualified to vote must be permitted to vote for the positions of county committeeman in the Democratic primary election in Nassau County on September 14, 1971.
*563 In view of the desire of all-parties for an expeditions determination of this matter, the court has dispensed with the submission of proposed judgments on notice, and has entered judgment in accordance with this opinion.